IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


CHERI BUDY,

                          Plaintiff,                    Case No. 3:14 CV 807

          -vs-
                                                        MEMORANDUM  OPINION
FEDERAL EXPRESS CORPORATION,

                          Defendant.

KATZ, J.

     Defendant Federal Express Corporation (FedEx) previously moved for summary judgment

pursuant to Federal Rule of Civil Procedure 56(a).  (Doc. No. 23).  Plaintiff Cherie Budy filed a

response.  (Doc. No. 31).  FedEx filed a reply (Doc. No. 33), and Ms. Budy filed a surreply.  (Doc.

No. 37).

     On October 13, 2015, the Court granted summary judgment to FedEx on Ms. Budy's

Family Medical Leave Act (FMLA) claim and remanded her supplemental state law claims to the

Wood County, Ohio, Court of Common Pleas.  (Doc. Nos. 38, 39).  On October 16, 2015, FedEx

filed a motion for relief under Federal Rule of Civil Procedure 60 arguing that the Court erred in

remanding the supplemental state law claims back to state court.  (Doc. No. 41).  Ms. Budy has

filed a response.  (Doc. No. 43).  FedEx has once again removed the case from the Wood County

Court of Common Pleas.  (Doc. No. 44; Case No. 15-cv-2303).

     Upon review, FedEx's Rule 60 motion is granted.  The Court amends its prior decision to

also address Ms. Budy's supplemental state law claims.

## I.  Jurisdiction and Venue

The Court finds that it has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.  Venue is also properly before this Court.  *See* 28 U.S.C. § 1391; N.D. Ohio R. 3.8.

## II.  Facts

The following facts are undisputed.  Ms. Budy began working for FedEx's Toledo, Ohio station in 1985 as a seasonal employee before becoming a full-time employee in 1986.  At the time of her termination in 2012, Ms. Budy worked as a full-time courier and was responsible for sorting packages, loading the packages on her truck, and leaving the station to deliver the packages to FedEx customers based on her assigned route.

During her employment, Ms. Budy received copies of FedEx's employee's handbook which set forth the policies of the company.  She also received copies of the company's Acceptable Conduct Policy and Performance Improvement Policy, which noted that an employee who received three letters of discipline or deficiency within a twelve-month period was normally discharged.  Ms. Budy also received copies of the company's attendance policy which required her to appear on-time at least 96% of the time, or she could be subject to discipline.

During her employment, Ms. Budy took several leaves of absences for medical or family reasons.  In 2007 and 2011, Ms. Budy filed the necessary papers requesting intermittent leave under the FMLA, 29 U.S.C. § 2601 et seq., so she could care for family members with health conditions.

Ms. Budy's FMLA request was approved for the period between March 2001, through February 2012, so as to care for her daughter's medical condition and to take her daughter to

2

medical appointments.  However, Ms. Budy did not use FMLA leave during this time to care for her daughter.  Further, Ms. Budy did not request intermittent FMLA leave beyond February 2012 because her daughter's health had improved and Ms. Budy did not need to extend the request.

During her employment, Ms. Budy was counseled or disciplined by FedEx on multiple occasions for failing to comply with the company's policies or her manager's directives.  She also received counseling on numerous occasions regarding her tardiness.  Ms. Budy was disciplined multiple times for failing to meet the company's punctuality requirements.

Although within its authority to do so, FedEx chose not to terminate Ms. Budy on at least two occasions before her 2012 termination, when she had received three or more disciplinary letters within a twelve-month period.  Ms. Budy admits that during her employment, she was aware of the company's Guaranteed Fair Treatment Procedure where she was allowed to contest discipline and certain other employment actions that she believed to be unfair.  She was also familiar with the company's Internal EEO Complaint Process wherein an employee may complain of discrimination, harassment, or retaliation.  Although Ms. Budy utilized the Fair Treatment Procedure to appeal a 2007 disciplinary letter and the final disciplinary letter of 2012, which resulted in her termination, she did not use the procedure or the EEO Complaint Process to contest the other disciplinary letters she received for poor punctuality.

In 2010, Ms. Budy began reporting to Manager Michelle Sullivan.  During the next two years, Ms. Sullivan counseled Ms. Budy on several occasions regarding her poor punctuality and failure to follow company procedures.  Ms. Sullivan also complimented Ms. Budy when she met or exceeded her courier goals or otherwise demonstrated good performance.

On September 28, 2011, Ms. Sullivan disciplined Ms. Budy for unsatisfactory punctuality after Ms. Budy arrived late to work twelve times in twelve months.  Ms. Budy did not contest this decision under FedEx's internal appeal process.  When Ms. Budy again failed to correct her punctuality problems, Ms. Sullivan disciplined Ms. Budy on January 16, 2012, for arriving late to work eleven times in twelve months.  Ms. Budy did not appeal this decision.

From April 2012 to June 2012, Ms. Sullivan counseled Ms. Budy three times regarding Ms. Budy's failure to punch out her paper time card at the time clock before she turned in her time cards and left her station for the day.  Ms. Budy was admittedly trained and familiar with the procedures required by FedEx upon completing her delivery route for the day.  When Ms. Budy failed to clock out for the sixth time in a period of two months, Ms. Sullivan disciplined her in June 2012, for time-card process failure.  Because this was the third disciplinary letter Ms. Budy received in twelve months, Ms. Sullivan terminated Ms. Budy's employment pursuant to company policy.

Ms. Budy contested her final disciplinary letter and termination under FedEx's Fair Treatment process.  The letter and termination was upheld through the company's appeal and review procedures.

Ms. Budy states that in late spring or summer of 2011, she told her managers that she was having joint pain in her shoulders and knees.  She was undergoing tests to determine the cause of her pain.  Ms. Budy's tests were inconclusive and she never received a diagnosis or explanation for the joint pain.  After October 2011, Ms. Budy felt well enough to cease seeking medical attention for the joint pain.

4

Ms. Budy testified that she did not remember why she was one minute late arriving to work on June 13 and 20, 2011, and three minutes late on August 15, 2011.  Further, she does not remember if she told her manager why she was late every time she was tardy to work.

Ms. Budy did state that on at least two occasions in June 2011, she told her managers she was sick and could not get out of bed.  Ms. Budy feels that these two late arrivals should be excused as FMLA leave time.  She further believes that she would not have received one or both of the disciplinary letters of 2011 and 2012 for unsatisfactory punctuality if her manager had not counted these two late arrivals against her punctuality record.  Ms. Budy conceded that she did not think Ms. Sullivan discriminated against her because of her age and gender.

Ms. Budy believes that her senior manager, Jason Straub, was responsible for her termination and discrimination.  She feels that Mr. Straub may have wanted her to leave the company because he cares about cutting costs.  Ms. Budy stated that she was at the top of the pay scale for her position and that she was "an expensive employee."

On March 19, 2014, Ms. Budy sued FedEx in the Wood County, Ohio, Court of Common Pleas.  In her complaint, Ms. Budy alleged that she was "willfully discriminated against" because of her sex and age in violation of Ohio Rev. Code "Chapter 4112" and § 4112.02.  She also alleged a violation of her rights under the FMLA.  FedEx subsequently removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1441.

### III.  Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting a genuine issue of material fact must support the argument either by "citing to particular

5

parts of materials in the record" or by "showing that the materials cited do not establish the
absence or presence of a genuine dispute, or that an adverse party cannot produce admissible
evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  A court views the facts in the record and
reasonable inferences which can be drawn from those facts in the light most favorable to the
nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v.
Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no
genuine issue of material fact exists, which the party must discharge by producing evidence to
demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an
absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S.
317, 323–25 (1986) (internal quotation marks omitted).  If the moving party satisfies this burden,
the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts
showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374
(6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586).  The party opposing the
summary judgment motion must present sufficient probative evidence supporting its claim that
disputes over material facts remain; evidence which is "merely colorable" or "not significantly
probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

## IV.  FMLA Claim

Ms. Budy alleged that FedEx violated her rights under the FMLA.  The Sixth Circuit
has recognized two discrete theories of recovery under the FMLA:  (1) the so-called
"interference" or "entitlement" theory arising from § 2615(a)(1), and (2) the
"retaliation" or "discrimination" theory arising from § 2615(a)(2). Although we have
held that a claim for retaliatory discharge is cognizable under either theory, the

6

requisite proofs differ.  The interference theory has its roots in the FMLA's creation of substantive rights, and if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer.  The central issue raised by the retaliation theory, on the other hand, is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.  In contrast to the interference theory, the employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights.

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (internal quotation marks, alterations, and citations omitted).

Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA provision.  To establish a prima facie case of FMLA interference, Ms. Budy must show that:

(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citation omitted).

To establish a prima facie case of retaliation under the FMLA, Ms. Budy must show that: (1) she was engaged in a statutorily protected activity; (2) FedEx knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action.  *Seeger*, 681 F.3d at 283.  "'The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.'"  *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

In her complaint, Ms. Budy fails to allege which theory of recovery under the FMLA she is pursuing.  However, in her response to FedEx's motion for summary judgment, Ms. Budy states that the termination concerned the "denial of, interference with, or retaliation against her for exercising rights" under the FMLA.  (Doc. No. 31, p. 2).  Therefore, the Court will evaluate Ms. Budy's FMLA allegation under both theories.

To be entitled to FMLA leave, Ms. Budy is required to show that she had a serious health condition that made her unable to work.  *See* 29 U.S.C. § 2612(a)(1)(D).  Because Ms. Budy failed to receive inpatient care during the summer of 2011, the period in question, she must establish that she underwent "continuing treatment" for a "serious health condition."  *See* 29 U.S.C. § 2611(11)(B).  To meet this requirement, Ms. Budy must prove that she suffered more than three consecutive days of incapacity due to her illness.  *See* 29 C.F.R. § 825.115(a).  Without proof of incapacity, Ms. Budy is unable to show she suffered from a "serious health condition."  *Id.*

There is no medical evidence that Ms. Budy was incapacitated for a period of more than three consecutive days, or that she was unable to perform the requirements of her position as a FedEx courier.  Rather, Ms. Budy's medical records show normal or unremarkable examinations, tests, and scans during the summer of 2011.  Ms. Buddy even admitted that her physicians were unable to diagnose what caused her joint pain.  Further, her medical records did not restrict Ms. Budy from performing her job duties or any other activities.

Ms. Budy tries to overcome this problem by stating in an affidavit that her joint pain was severe enough to prevent her from working on June 16 and June 17, 2011, and from doing anything physically demanding on June 18 and 19, 2011, which were weekend days, when she was not scheduled to work.  The affidavit is insufficient to prove that she was incapacitated due to

8

a serious health condition. *See Lackey v. Jackson County, Tenn.*, 104 F. App'x 483, 489 (6th Cir. 2004) (agreeing with the district court that the plaintiff's own allegations and ambiguous doctor notes failed to establish that plaintiff had a serious health condition). Therefore, Ms. Budy's affidavit does not demonstrate that she was incapacitated or seriously ill for more than three consecutive days.

Accepting for the sake of argument, however, that even if Ms. Budy could show that she was "incapacitated" for the four consecutive days in June of 2011, including the two weekend days on which she was not scheduled to work, there is no evidence that FedEx knew that she was incapacitated during this time. Ms. Budy concedes that FedEx could only have known that joint pain caused her to be absent for June 16 and June 17, her scheduled working days. Ms. Budy stated that she told her managers at FedEx that she was having knee and shoulder problems and she "was sick and couldn't get out of bed." This is not enough information, however, for Ms. Budy's supervisors to know that she was suffering from a FMLA-qualifying condition for more than three days.

The Sixth Circuit stated in *Festerman v. County of Wayne*, 611 F. App'x 310, 315 (6th Cir. 2015) (internal quotation marks and citations omitted):

> [T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave. Whether an employee has submitted adequate notice to an employer of the employee's intent to take leave under the FMLA is an intensely factual determination. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. The standard, as established by this Court, is whether the employee has given the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred. Section 825.303(b) makes it clear that merely calling in sick is insufficient to trigger any obligation of the employer under the FMLA. The employee's burden, however, is not a heavy one. Instead, once the employee has met his initial burden, the onus to obtain any additional required information is on the employer.

9

Ms. Budy's admitted comments that she was having knee and shoulder problems and she "was sick and couldn't get out of bed" to her managers is exactly the "calling in sick" which *Festerman* found to be insufficient.  *Id*.  These comments would not give FedEx enough information to conclude the two days in question would qualify as FMLA leave.  *Id*.

Ms. Budy further claims that her "severe joint pain" caused her to arrive one minute late to work on June 20, 2011.  However, there is no evidence indicating this tardiness was attributable to that condition.  Although Ms. Budy has submitted an affidavit that pain caused her to be late for work on that date, the affidavit conflicts with her deposition wherein she testified that she did not remember why she was late for work on June 20.

Ms. Budy further testified in her deposition that she may not have given her manager a reason why she was late to work.  Ms. Budy cannot create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.  *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  Her affidavit cannot defeat FedEx's motion for summary judgment.  *See Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006).

Furthermore, even if Ms. Budy had a qualifying FMLA condition, the applicable regulation during the time period in question limited the circumstances under which absences can be designated as FMLA leave after the fact.  Specifically, Ms. Budy was required to notify FedEx within two business days of returning to work that her leave was for a FMLA reason.  Absent this timely notification, she cannot subsequently assert FMLA protections for that leave.  29 C.F.R. § 825.208(e)(1).[1]  Ms. Budy waited more than a year to assert a FMLA reason for her tardiness in

---

[1]  On February 6, 2013, the prior language of § 825.208 was eliminated and the section was

June 2011.  Thus, she did not give FedEx the required timely notice that her tardiness was for an FMLA reason.  *Id.*

Ms. Budy argues that FedEx had already approved her use of intermittent FMLA leave during the summer of 2011.  Thus, her tardiness during that time should be deemed as intermittent FMLA leave.  Although FedEx approved Ms. Budy's 2011 request to take intermittent leave under the FMLA, the request and approval was for the care and treatment of her daughter's serious health condition, not for Ms. Budy.  There is no evidence that Ms. Budy requested, and was approved by FedEx, to use intermittent FMLA leave for her own health conditions.  Although Ms. Budy suggests some of her tardies in 2011 were attributed to her daughter's health condition, there is no evidence to support this assertion.  To the contrary, Ms. Budy's testimony refutes this position.  In her deposition, Ms. Budy testified that she never used any intermittent FMLA leave to care for her daughter during the period which FedEx had approved.

Despite being approved to take intermittent FMLA leave, Ms. Budy still must provide sufficient notice of her intent to take intermittent FMLA leave on any of the days she was late to work in 2011.  In *Brennenman v. MedCentral Health Sys.*, 366 F.3d 412, 425 (6th Cir. 2004), the Sixth Circuit held that despite being qualified for FMLA coverage, a plaintiff must still provide the employer the requisite notice that an absence qualified as leave under the FMLA in a timely fashion.  Although she had been approved for intermittent leave to care for her daughter, this fact does not provide sufficient notice to FedEx that any of Ms. Budy's tardies in 2011 may have been due to her daughter's or her own FMLA-qualifying illnesses.  Without the notice, the tardies are

---

designated as "Reserved." 78 Fed. Reg. 8924 (Feb. 6, 2013).  The notice requirements for employees are now contained in 29 C.F.R. § 825.302–04.

11

not protected by the FMLA.  *See id.*  For these previously stated reasons, the Court finds that Ms. Budy has failed to establish a prima facie case of FMLA interference.  *Donald*, 667 F.3d at 761.

FedEx is also entitled to summary judgment regarding Ms. Budy's FMLA retaliation theory.  In reviewing the evidence, the Court finds that FedEx terminated Ms. Budy for the legitimate, nondiscriminatory reason of not complying with the company's policies and procedures.  The record is replete with repeated instances of Ms. Budy's failure to timely arrive to work and to properly punch her time card.

Ms. Budy requested and was approved to take FMLA leave in order to care for her daughter.  Despite receiving such approval, no FMLA leave was taken for that purpose.  Ms. Budy did not request FMLA leave for herself.  In addition, she did not request in a timely manner, before or after the dates in question, that her leave and tardiness be considered FMLA leave.  Further, Ms. Budy had a long history of extreme tardiness, despite numerous warnings regarding such behavior.  Given the lack of medical evidence of a serious health issue, the lack of the required FMLA notice regarding the dates in question, and her extensive history of tardiness, the Court finds that Ms. Budy has not established a causal connection between her termination and her FMLA rights.  Thus, Ms. Budy has not established a prima facie case of retaliation.  *Seeger*, 681 F.3d at 282–83.

### V.  Sex and Age Discrimination Claims

Ms. Budy alleged that FedEx discriminated against her on account of her sex in violation of Ohio Rev. Code § 4112.02.  The Sixth Circuit has explained:

> Because the elements and legal standards for establishing unlawful sex discrimination are the same under Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e–2, *Little Forest Medical Center of Akron v. Ohio Civil Rights Common*, 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164 (1991), we need not analyze Laderach's

12

> sex discrimination claims separately under state and federal law.  *See Norbuta v.*
> *Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999) (unpublished) ("[T]his court need not
> analyze Norbuta's claims regarding sex discrimination and sexual harassment
> separately under federal and state law" because the Ohio Supreme Court "has held
> that the elements and legal standards for establishing unlawful sex discrimination
> under Ohio Revised Code § 4112.02(A) are the same as those under Title VII.").

*Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir. 2000).

Regarding her allegation of age discrimination, the Ohio Supreme Court has stated that an individual must establish "(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class."  *Byrnes v. LCI Commc'n Holdings Co.*, 672 N.E.2d 145, 148 (Ohio 1996) (citations and internal quotation marks omitted).  The court noted that it had previously adopted the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), analysis with regard to age discrimination claims under § 4112.02.  *Id.*

In *McDonnell Douglas*, the United States Supreme Court set forth the evidentiary framework for analyzing workplace discrimination actions.  *Laderach*, 207 F.3d at 828.  Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff bears the burden of establishing by a preponderance of the evidence a prima facie case of discrimination (i.e., a presumption of discrimination).  A plaintiff satisfies this burden by proving that:  (1) she was a member of a protected class; (2) she suffered an adverse action; (3) she was qualified for the position; and (4) she was replaced by, or was treated differently than, someone outside the protected class.  *McDonnell Douglas*, 411 U.S. at 802; *Laderach*, 207 F.3d at 828.

Once the plaintiff establishes a prima facie case, an inference of discrimination arises.  The burden of proof then shifts to the employer to articulate a legitimate, nondiscriminatory reason for

the plaintiff's discharge. *McDonnell Douglas*, 411 U.S. at 802; *Laderach*, 207 F.3d at 828.  Once established, the burden shifts back to the plaintiff to prove that the employer's articulated nondiscriminatory reason for its action was merely a pretext for unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Laderach*, 207 F.3d at 828.  In other words, the plaintiff must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir. 1996) (citations omitted).

Ms. Budy has failed to present evidence of either sex or age discrimination. Under *McDonnell Douglas*, Ms. Budy must present sufficient evidence to demonstrate that a similarly-situated male or younger employee was not disciplined or discharged by FedEx.

To satisfy the "similarly situated" requirement, Ms. Budy must show that the employees were "similarly situated in all relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  The Sixth Circuit has explained:

> to be deemed "similarly situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Ms. Budy alleges that four male and/or younger employees at the Toledo Station for FedEx were similarly situated and were treated more favorably than her.  Ms. Budy asserts that the employees in question failed to punch out their paper time cards, but were not disciplined, or received three disciplinary letters in a year, but were not discharged.

14

Ms. Budy claims that Annette Plotner, Michael Frankhauser, and Michael Hermiller, who are younger employees, had failed to punch their paper time cards on multiple occasions, yet were not disciplined or discharged.  These employees, however, are not similarly situated to Ms. Budy as required by *Ercegovich* and *Mitchell*.  It is undisputed that these employees failed to punch their time cards several times, for which they received counseling.  However, their actions were not as overt and in the same limited time period as Ms. Budy.  Annette Plotner, a female who is thirteen years younger than Ms. Budy, failed to punch her paper time card eight times over a three-year period.  Michael Frankhauser, a male who is twenty-two years younger than Ms. Budy, failed to punch out eight times over a period of more than two years.  Michael Hermiller, a male who is one year younger than Ms. Budy, failed to punch out six times over a period of almost two years.

In contrast, the undisputed facts establish that Ms. Budy failed to punch her paper time card six times over a period of less than two months.  Michelle Sullivan counseled Ms. Budy three separate times and placed her in a performance agreement to correct this problem.  Despite these events, Ms. Budy did not correct her actions.  As a result, Ms. Sullivan disciplined Ms. Budy with a performance reminder after Ms. Budy failed to punch her time card for the sixth time in less than two months.  Ms. Sullivan also disciplined Mr. Hermiller with a performance reminder for failing to punch his paper time card.  Therefore, Ms. Sullivan treated Ms. Budy and Mr. Hermiller equally by disciplining them both for repeatedly failing to punch their time cards.

Further, it is undisputed that Ms. Sullivan did not supervise Ms. Plotner and Mr. Frankhauser.  In order "to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor."  *Mitchell*, 964 F.2d at 583.  There is no evidence that Ms. Plotner and Mr. Frankhauser dealt with the same manager

15

who disciplined Ms. Budy.  Nor is there anything to suggest that Ms. Sullivan was connected with FedEx's decisions to counsel, rather than discipline, Ms. Plotner and Mr. Frankhauser.

In an attempt to avoid *Mitchell's* "same supervisor" requirement, Ms. Budy desires to broaden the scope of supervision by applying the definition from Ms. Sullivan, her direct supervisor, to Senior Manager Jason Straub.  Ms. Budy testified in her deposition that she does not believe Ms. Sullivan was the individual responsible for the discrimination.  Rather, she believes it was Mr. Staub who was the individual responsible for the discrimination.   However, there is no evidence to support Ms. Budy's position.

The undisputed facts establish that Ms. Budy and her comparators were all counseled after failing to punch their paper time cards.  Unlike her comparators, Ms. Budy failed to correct her actions despite repeated counseling from her supervisor.  Ms. Budy failed to punch her time card several times in a period of two months.  Ms. Budy's comparators never engaged in this same conduct.  Given these differences, Ms. Plotner, Mr. Frankhauser, and Mr. Hermiller are not similarly situated to Ms. Budy in all relevant respects as required by *Ercegovich* and *Mitchell*. Thus, Ms. Budy has not established a prima facie case against FedEx based on these individuals.

Ms. Budy alleges that a male employee, Doug Barris, was disciplined three times within one year but, unlike her, was not discharged by FedEx.  However, Ms. Budy has not presented any competent evidence to establish that Mr. Barris received three disciplinary letters within a year.

Ms. Budy supports her position regarding Mr. Barris based on an unverified statement from an unidentified individual.  However, this statement is controverted by evidence showing that Mr. Barris was only disciplined twice during his employment with FedEx — once in 2007 and again in 2009.  The "similarly situated" requirement discussed in *Ercegovich* and *Mitchell* is

16

lacking regarding Mr. Barris because Ms. Budy has presented no evidence to suggest:  (1) that Mr. Barris should have been disciplined, but was not; (2) that Ms. Sullivan was also Mr. Barris's supervisor at the time Mr. Barris should have been disciplined; and (3) that Ms. Sullivan was the manager who decided not to discipline and discharge Mr. Barris.

Even if Ms. Budy could present competent evidence that Mr. Barris should have received a third disciplinary letter and been discharged in 2008 or 2009, it is undisputed that Mr. Straub played no part in those decisions because he did not become the Senior Manager at the Toledo Station until August 2011.  Thus, there is no admissible evidence suggesting that Mr. Barris was similarly situated to Ms. Budy to warrant comparison between the two individuals for the purposes of establishing a prima facie case of sex discrimination.  In addition, because Mr. Barris is three years older than Ms. Budy, he cannot serve as a comparator for her age discrimination claim.

Further, the record shows that Ms. Sullivan has fired male or younger employees who received three disciplinary letters in a span of twelve months.  These facts, and the lack of an animus of sex or age discrimination, establish that Ms. Budy has failed to prove a prima facie case of sex or age discrimination.

Ms. Budy has also failed to show that FedEx's reasons for terminating her performance were pretextual.  A plaintiff may establish pretext by showing:  (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment decision; or (3) the reasons were insufficient to motivate the adverse employment decision.  *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 285 (6th Cir. 2012).  However, "[i]f an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision

(i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (citation omitted).

Ms. Budy has failed to refute the evidence of her poor performance that FedEx relied upon in reaching its decisions to not only discipline her, but to also terminate her employment. The facts establish that when Ms. Sullivan made the decision to discipline Ms. Budy on June 22, 2012, Ms. Budy had failed to punch her time card six times in less than two months, even after having received counseling from Ms. Sullivan. In addition, Ms. Budy received her third disciplinary letter in less than a year on June 22, 2012.

Ms. Budy does not dispute the reasons for her termination, but contends the punishment was too harsh. The evidence does not establish that the discipline and termination was based upon unlawful sex or age discrimination. Therefore, the Court finds that FedEx is entitled to summary judgment regarding Ms. Budy's supplemental state law claims of sex and age discrimination.

VI.  Ohio Public Policy

Ms. Budy alleged that FedEx wrongfully discharged her in violation of Ohio public policy. In her memorandum in opposition to FedEx's motion for summary judgment, Ms. Budy states that she no longer intends to pursue this claim. (Doc. No. 31, p. 18). Therefore, Ms. Budy's public policy allegation is dismissed.

VII. Case No. 15-cv-2303

On November 10, 2015, FedEx once again removed the case from the Wood County Common Pleas Court pursuant to § 1441. The removal was obviously made before the Court had the opportunity to rule upon FedEx's pending Rule 60 motion. Because the Court is granting the Rule 60 motion and is addressing Ms. Budy's supplemental state law claims, the Court will dismiss Case No. 15-2303 as duplicative. The Court finds that under the circumstances which led the Court to erroneously remand the case back to state court, the restrictions of 28 U.S.C. § 1447(d) are not applicable and do not prevent the granting of the Rule 60 motion. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 194–97 (4th Cir. 2008). Accordingly, Case No. 15-2303 is dismissed as duplicative.

Ms. Budy has objected to FedEx's second removal because of the time restrictions set forth in 42 U.S.C. § 1446(b). However, in light of the Court's dismissal of the case, the objection is overruled as moot.

VIII. Conclusion

FedEx's motion for relief under Federal Rule Civil Procedure 60 is granted. Summary judgment is granted to FedEx as to all of Ms. Budy's claim. Case No. 15 cv 2303 is dismissed as duplicative. Ms. Budy's objection to the removal in Case No. 15 cv 2303 is overruled as moot.

IT IS SO ORDERED.

　　s/ *David A. Katz*　　
DAVID A. KATZ
U. S. DISTRICT JUDGE

19